IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 77488-3-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ALEX ARNOLD CHAVEZ, | |
| Appellant. | FILED: June 17, 2019 |

CHUN, J. — A jury convicted Alex Chavez of domestic violence felony violation of a no-contact order. On appeal, Chavez raises claims of prosecutorial misconduct. Because none of the prosecutor's statements amount to error, we affirm the conviction. However, the incorrectly calculated offender score and improperly imposed DNA fee require remand for resentencing.

I.
BACKGROUND

In October 2015, the King County District Court issued a post-conviction replacement no-contact order restraining Chavez from contacting his former girlfriend, the mother of his child. The order prohibited Chavez from knowingly entering, remaining, or coming within 500 feet of Amy Krajci's residence, school, workplace, or vehicle. The order has a duration of five years.

One morning in February 2017, Krajci called the police to report that she saw Chavez outside her apartment in violation of the no-contact order. The police responded and located Chavez about 100 feet from Krajci's building.

Seattle Police Officer David Moore contacted Chavez and placed him under arrest for violating the no-contact order. Because of Chavez's extensive history of convictions for violating court orders, the State charged him with domestic violence felony violation of a court order.

During the trial, Officer Moore testified about his encounter with Chavez. RP 570-82, 643-64. Officer Moore stated that Chavez cooperated, but initially questioned if the arrest was a "ruse." When Officer Moore asked Chavez if he was aware that he had a no-contact order, Chavez responded, "I wasn't aware that I was violating it."

Officer Moore searched Chavez incident to arrest. Among the items in Chavez's pockets, Officer Moore found an Electronic Benefits Transfer (EBT) card.[1] Chavez told Officer Moore he wanted to give the card to his daughter. Along with this statement, Chavez turned back towards the residence and motioned with his head. Officer Moore further testified that Chavez expressed concern that he had not seen or heard from his daughter and wanted information about her. Officer Moore spoke with Chavez about possible ways to find information about his daughter without violating the court order.

After further testimony, a jury convicted Chavez of domestic violence felony violation of a court order. The trial court calculated an offender score of 19, with a standard range sentence of 72 to 96 months. Instead of a standard

---

[1] For those with food assistance benefits, an EBT card acts as a debit card to purchase food items at stores. Https://www.dshs.wa.gov/esa/community-services-offices/ebt-and-eft-make-getting-benefits-easier.

range sentence, the trial court sentenced Chavez to a 30 month prison-based drug offender sentencing alternative. The court also ordered Chavez to pay the $100 DNA collection fee.

Chavez appeals.

## II.
## ANALYSIS

### A. Prosecutorial Misconduct

To prevail on a claim of prosecutorial misconduct, the defendant must prove that the prosecutor's comments were improper and prejudicial. State v. Yates, 161 Wn.2d 714, 774, 168 P.3d 359 (2008). "The burden to establish prejudice requires the defendant to prove that 'there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict.'" State v. Thorgerson, 172 Wn.2d 438, 442-43, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2007) (alteration in original)).

Chavez raises two claims of prosecutorial misconduct based on statements made during the opening and closing arguments of the State's case. He contends the prosecutor argued facts not in evidence and improperly shifted the evidentiary burden. We conclude that neither claim amounts to prosecutorial misconduct.

### 1. Facts Not in Evidence

Chavez argues the prosecutor stated in opening and closing arguments that Chavez clearly told police that he was concerned about his daughter and wanted to give her the EBT card. According to Chavez, the State failed to

produce evidence that Chavez explicitly made statements to that effect. We disagree.

The State has wide latitude to argue inferences from the evidence but, "a prosecutor commits reversible misconduct by urging the jury to decide a case based on evidence outside the record." State v. Pierce, 169 Wn. App. 533, 553, 280 P.3d 1158 (2012).

The State made several statements about Chavez's desire to give the EBT card to his daughter. In opening statements, the prosecutor told the jury that Chavez, "tells the officers that he is there because he's concerned about his daughter. He wants to give his daughter an EBT card." The prosecutor repeats this claim in closing arguments: "He's very clear. This is why he's here. It's not complete happenstance that he's on this corner and his daughter happens to be inside. And he has an EBT card in his pocket that he just happens to tell the officers, I'm here to give this to my daughter." And finally, the prosecutor summarized Officer Moore's testimony as, "the Defendant talked to me about being there to give his daughter an EBT card."

Chavez claims the prosecutor's statements "grievously misstated the testimony." But the prosecutor did not misstate the evidence. Instead, the prosecutor referenced the testimony from Officer Moore. Officer Moore testified that Chavez expressed concern about his daughter during their conversations. RP 573. Officer Moore also stated that upon the search incident to arrest, Chavez had an EBT card in his pocket, said he wanted to give the card to his

daughter, and motioned toward Krajci's residence with his head. The prosecutor's comments constitute logical inferences from this testimony and were not improper.

2. Burden Shifting

Chavez also argues the prosecutor improperly shifted the evidentiary burden during closing arguments. The State claims the prosecutor permissibly commented on the lack of evidence to support other theories of the case. We agree with the State.

The State bears the burden of proving all elements of its case beyond a reasonable doubt. State v. Fleming, 83 Wn. App. 209, 215, 921 P.2d 1076 (1996). "[I]t is flagrant misconduct to shift the burden of proof to the defendant." State v. Miles, 139 Wn. App. 879, 890, 162 P.3d 1169 (2007). A prosecutor may commit misconduct by telling the jury to find a defendant guilty based on the failure to present evidence to support the defense's theory. State v. Sells, 166 Wn. App. 918, 930, 271 P.3d 952 (2012). "However, '[t]he mere mention that defense evidence is lacking does not constitute prosecutorial misconduct or shift the burden of proof to the defense.'" Sells, 166 Wn. App. at 930 (quoting State v. Jackson, 150 Wn. App. 877, 885-86, 209 P.3d 553 (2009)). A prosecutor is entitled to "point out improbabilities or a lack of evidentiary support for the defense's theory of the case." State v. Killingsworth, 166 Wn. App. 283, 291-92, 269 P.3d 1064 (2012).

Here, the prosecutor made exactly this observation to the jury. The prosecutor stated, "So we know that the defendant knowingly violated the order. There is absolutely no evidence to the contrary and, in fact, all the evidence shows that he knew she was there. He wanted to give her his EBT card." The prosecutor also made a subsequent comment that, "the State is asking you and will continue to ask you to draw reasonable inferences from the evidence or lack thereof."

The prosecutor's statements do not imply that the defense was required to produce evidence and failed to do so. See Killingsworth, 166 Wn. App. at 291-92. Instead, the statements merely point to the strength of the State's evidence and the lack of evidentiary support for any other theory. As such, these statements do not shift the burden of proof to the defendant and do not constitute improper statements.

Because the prosecutor's statements were not improper, Chavez cannot prevail on a claim of prosecutorial misconduct. We affirm his conviction and turn to the sentencing issues.

B. Offender Score Miscalculation

Chavez claims the trial court miscalculated his offender score by improperly doubling his prior domestic violence convictions. The State concedes this error. We agree and remand for recalculation and resentencing based on the corrected score.

In order to determine the appropriate sentence, the trial court must calculate a defendant's offender score by adding together the current offenses and prior convictions. State v. Hunley, 175 Wn.2d 901, 908-09, 287 P.3d 584 (2012); RCW 9.94A.525. The State bears the burden of proving prior convictions by a preponderance of evidence. Hunley, 175 Wn.2d at 909-10. An appellate court reviews the calculation of offender scores de novo. State v. Shelley, 3 Wn. App.2d 196, 199, 414 P.3d 1153 (2018).

When calculating the offender score, each prior adult felony conviction generally counts as one point, while juvenile felony convictions counts as a half point. RCW 9.94A.525(7). However, if a defendant's present conviction is a domestic violence offense, the court must double each prior felony conviction—both adult and juvenile—where domestic violence was pleaded and proven after August 1, 2011. RCW 9.94A.525(21)(a),(c).[2]

---

[2] (21) If the present conviction is for a felony domestic violence offense where domestic violence as defined in RCW 9.94A.030 was pleaded and proven, count priors as in subsections (7) through (20) of this section; however, count points as follows:

(a) Count two points for each adult prior conviction where domestic violence as defined in RCW 9.94A.030 was pleaded and proven after August 1, 2011, for any of the following offenses: A felony violation of a no-contact or protection order RCW 26.50.110, felony Harassment (RCW 9A.46.020(2)(b)), felony Stalking (RCW 9A.46.110(5)(b)), Burglary 1 (RCW 9A.52.020), Kidnapping 1 (RCW 9A.40.020), Kidnapping 2 (RCW 9A.40.030), Unlawful Imprisonment (RCW 9A.40.040), Robbery 1 (RCW 9A.56.200), Robbery 2 (RCW 9A.56.210), Assault 1 (RCW 9A.36.011), Assault 2 (RCW 9A.36.021), Assault 3 (RCW 9A.36.031), Arson 1 (RCW 9A.48.020), or Arson 2 (RCW 9A.48.030);

. . .

(c) Count one point for each second and subsequent juvenile conviction where domestic violence as defined in RCW 9.94A.030 was pleaded and proven after August 1, 2011, for the offenses listed in (a) of this subsection; and

(d) Count one point for each adult prior conviction for a repetitive domestic violence offense as defined in RCW 9.94A.030, where domestic violence as defined in RCW 9.94A.030, was pleaded and proven after August 1, 2011.

RCW 9.94A.525(21)(a),(c),(d).

7

Chavez has a lengthy record of felony domestic violence related convictions, with four juvenile and five adult convictions. When calculating his offender score, the trial court doubled these nine convictions to arrive at an offender score of 19. But RCW 9.94A.525(21) does not apply because the nine convictions were pleaded and proven before August 1, 2011. Therefore, the trial court erred in its calculation of Chavez's offender score.

By imposing a sentence based on an incorrect offender score, the trial court acted without statutory authority. In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 868, 50 P.3d 618 (2002). The defendant is entitled to reversal and remand for resentencing on the erroneous portion of the sentence. Goodwin, 146 Wn.2d at 869-70. On remand, both Chavez and the State "have the opportunity to present any evidence relevant to ensure the accuracy of the criminal history." State v. Jones, 182 Wn.2d 1, 10-11, 338 P.3d 278 (2014).

C. DNA Fee

Both parties request remand for the trial court to strike the $100 DNA fee because the State previously collected Chavez's DNA due to prior convictions. A legislative amendment effective June 7, 2018, eliminated the mandatory $100 DNA collection fee where "the state has previously collected the offender's DNA as a result of a prior conviction." RCW 43.43.7541. This amendment applies prospectively to Chavez due to his pending direct appeal at the time of the amendment's enactment. State v. Ramirez, 191 Wn.2d 732, 747, 426 P.3d 714

(2018). As a result, we agree with the parties' request and remand for the trial court to strike the DNA fee from the judgment and sentence.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Chun, J.

WE CONCUR: